UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD GELFAND,<br><br>        Plaintiff,<br><br>        v.<br><br>NORTH AMERICAN CAPACITY INSURANCE COMPANY,<br><br>        Defendant.<br>_____/ | No. C-12-4819 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Docket No. 21)** |

        Plaintiff Todd Gelfand, trustee of the Reata Trust ("Reata"), brought a state-court action (later removed to this Court) to confirm an arbitration award issued against Paragon, the contractor who built Reata's residence. The state court confirmed the arbitration award. In the case at bar, Reata sues Northern American Capacity Insurance Company ("NAC"), the contractor's insurer, to recover the full amount of the judgment against Paragon. Currently pending before the Court is NAC's motion for partial summary judgment. The key issue is whether Reata can recover directly from NAC that portion of the judgment consisting of attorney's fees and costs awarded against Paragon, the insured.

        Having considered the parties' briefs and accompanying submissions, as well as the argument of counsel, the Court hereby **GRANTS** Defendant NAC's motion for partial summary judgment.

///

///

///

## I. FACTUAL & PROCEDURAL BACKGROUND

Paragon General Contractors & Cabinetmakers, Inc. ("Paragon") constructed a luxury home in Half Moon Bay owned by Reata. *See* Docket No. 21-3 (Decl. of A. Carl Yaeckel ("Yaeckel Decl."), Ex. 1) (Complaint ("Compl.") ¶ 1). Later, alleging construction defects, Reata sued Paragon in arbitration in 2001. *Id.* ¶ 28.

NAC issued a commercial general liability insurance policy ("Policy") to Paragon. *Id.* ¶14. NAC retained counsel to defend Paragon in arbitration. *See* Docket No. 21-3 (Yaeckel Decl., Ex. 1) (Compl. ¶ 29). During arbitration, Paragon filed for Chapter 7 bankruptcy. *See id.* ¶ 32.

In December 2010, the arbitrator awarded Reata $1,390,774.19,[1] which included an award of $585,404.27 in attorney's fees and $35,767.21 in costs. *Id.* at ¶ 6. Reata petitioned to confirm the award in state court. *See* Docket No. 22-2 (Heimberger Decl. ¶ 21). The state court confirmed the award, *see* Docket No. 22-2 (Heimberger Decl., Ex. I) (Order Confirming Award), and entered judgment for Reata, *see* Docket No. 22-2 (Heimberger Decl., Ex. J) (Judgment Confirming Award). Shortly after entering judgment, the state court awarded Reata $25,000 in additional attorney's fees[2] and $2,080 in costs expended to confirm the award. In January 2013, NAC paid Reata $210,687 in partial satisfaction of the judgment relating to some of the property damage alleged by Reata. *See* Docket No. 22-17 (Heimberger Decl., Ex. O).

In August 2012, Reata brought the current action against NAC to recover fees and costs awarded by the state court judgment which confirmed the arbitration award. *See* Docket No. 21-3 (Yaeckel Decl., Ex. 1) (Compl. ¶ 7, at pg. JNI00013). Reata's complaint asserts three causes of action: (1) "Direct Action of Judgment Creditor Pursuant to Cal. Ins. Code § 11580"; (2) "Breach of

---

[1] *See* Docket No. 22-3 (Heimberger Decl., Ex. A) (Arbitration Award at p. 18). Reata has moved the Court to take judicial notice of nine documents, including the Arbitration Award. The Court grants the Reata's request as to this document, and as to Exhibits B, I, J, and L to the Heimberger Decl. Reata's request for judicial notice is uncontested. Moreover, courts may consider judicial notice of such matters when ruling on a summary judgment motion. *See* FRE 201(b); *Bennett v. Medtronic, Inc.*, 285 F.3d 801 n. 2 (9th Cir. 2002) (granting request for judicial notice of Tennessee state court proceedings).

[2] *See* Docket No. 22-2 (Heimberger Decl., Ex. L) (Order re Attorney's Fees).

Insurance Contract"; and (3) "Breach of the Implied Covenant of Good Faith and Fair Dealing." *See id.* at ¶¶ 58, 70, and 76.

NAC removed to federal court based on diversity. Currently before the Court is NAC motion for partial summary judgment. The issue is whether Reata, a third-party judgment creditor of the insured, may enforce directly against NAC that portion of the underlying judgment awarding attorney's fees and costs against the insured.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

In the current case, NAC, a defendant, has moved for partial summary judgment on the issue of whether Reata, a third-party judgment creditor, may recover a portion of the underlying judgment consisting of attorney's fees and costs awarded in arbitration below. Because Reata has the ultimate burden of proof, NAC may prevail on its motion for summary judgment simply by pointing to Reata's failure "to make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Calif. Ins. Code Section 11580

Reata did not obtain an assignment from Paragon of any claim for indemnification against NAC. Instead, Reata's suit against NAC to recover on the judgment against Paragon is predicated solely upon Calif. Ins. Code Section 11580. That section provides that an insurance policy must

1  contain a provision (among others) allowing third-party judgment creditors, under certain
2  circumstances, to recover on a judgment against the insured directly from the insurer:

> " ... whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

Calif. Insurance Code Section 11580(b)(2). *See* Croskey, et al., Cal. Practice Guide: Insurance Litigation, ¶ 15:1028, p. 15-177.

For Reata to recover directly from NAC under Section 11580, the amount of the underlying judgment against Paragon, including the award of attorney's fees and costs, Reata must establish both: (a) that the award against Paragon is covered under the terms of the policy issued by NAC; and (b) Reata, as a third-party judgment creditor, may enforce the policy term at issue as a third-party beneficiary thereto. *See Clark v. CIGA*, 200 Cal. App. 4th 391 (2011); *San Diego Hous. Comm'n. v. Indus. Indem. Co.*, 95 Cal. App. 4th 669 (2002).

C.  Coverage

NAC contends that fees and costs are covered by the NAC policy, if at all, only as either: (a) "damages" under the Insuring Clause; or (b) "costs" under the Supplementary Payments Provision ("SPP"). Reata responds that the No Action Clause instead constitutes the relevant coverage provision. The Court finds the award of fees and costs in the arbitration constitute "costs" under the SPP.

1. Damages

The Insuring Clause provides:

> "[NAC] will pay those sums that [Paragon] becomes legally obligated to pay as **damages** for bodily injury or property damage to which this Insurance applies."

*See* Docket No. 21-3 (Yaeckel Decl., Ex. 1) (Ex. A to Compl. at JNI00046).

The definition of "damage" under the policy is inapposite. Under the policy, "Damage means the estimated money equivalent for loss or injury sustained." *Id*. at JNI00053. Attorney's fees and costs simply do not fall within the scope of "loss or injury sustained," an expression that envisions loss to the insured arising from bodily injury or property loss.

In interpreting a similar insurance provision, the Court in *Prichard v. Liberty Mut. Ins. Co.* found that awarded attorney's fees was "inconsistent with the concept of damages." 84 Cal. App. 4th 890, 912 (citing *Cutler-Orosi Unified Sch. Dist. v. Tulare Cnty. Sch. etc. Auth.*, 31 Cal. App. 4th 617, 631 [1994]); *San Diego Hous. Comm'n. v. Indus. Indem. Co.*, 95 Cal. App. 4th 669 (2002); *Combs v. State Farm Fire & Cas. Co.*, 143 Cal.App.4th 1338, 1345 (2006). *See AIU Ins. Co. v. Super. Ct.*, 51 Cal.3d 807, 826-27 (1990). *See also* Croskey, et al., Cal. Practice Guide: Insurance Litigation, ¶ 7:160.4, p. 7A-77 (Rutter Group 2012) ("fee awards are not 'damages' under a CGL policy").

Reata cites *APL Co. Pte. Ltd. v. Valley Forge Ins. Co.*, 754 F. Supp. 2d 1084 (N.D. Cal. 2010) as holding to the contrary. The Court disagrees. In *APL*, the court interpreted the insurance policy as obligating the insurer to pay for attorney's fees awarded to a third-party judgment creditor in the underlying litigation. The court noted the policy obligated the insurer to "pay as damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury'...." [citations omitted], *id*. at 1094, and construed damages as encompassing compensation in money recovered for loss or detriment, including "remunerative payment made to an aggrieved party." *Id*. Critical to its determination that a fee award was covered as damages under the policy was that the English rule (wherein the losing party pays fees) applied to the case. *Id*. By contrast, the current case is not governed by the English rule. In the absence of such rule, the California state court cases cited above, rather than *APL*, applies. Accordingly, attorney's fees and costs awarded in the underlying case are not "damages" within the meaning of the NAC insurance policy.

2.  <u>Supplementary Payments Provision</u>

Instead, the award of fees and costs in the underlying case constitute "costs" under the SPP. The Insuring Clause, in relevant part, provides:

> "[Other than damages], [n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B."

///

///

///

5

1  And, the Supplementary Payments Provision provides:

[**SUPPLEMENTARY PAYMENTS PROVISION**]

"[NAC] will pay with respect to any claim or suit [NAC] defend[s]...[a]ll costs awarded against [Paragon] in the suit."

The California courts have held that attorney's fees and costs awarded to a third-party claimant against the insured are covered as "costs" under insurance policies comparable to the policy and the SPP clause. *See Ins. Co. of N. Am. v. Nat'l Am. Ins. Co.*, costs are statutorily defined. *See Ins. Co. of N. Am. v. Nat'l Am. Ins. Co.*, 37 Cal. App. 4th 195, 206-207 (1995); *San Diego Housing Comm'n*, *supra*, 95 Cal. App. 4th at 684 (2002); *see also Clark*, *supra*, 200 Cal. App. 4th at 398 (quoting *San Diego Housing*, 95 Cal. App. 4th at 685 (2002)); California Civil Code Section 1033.5(a)(10) ("Attorney's fees when authorized by any of the following: (A) contract, (B) statute, or (C) law").

### 3. No Action Clause

Reata argues that the No Action Clause, when interpreted along with other provisions, provides coverage of the entire judgment, including attorney's fees and costs, and affords Reata the right to sue NAC therefor. The No Action Clause provides:

"No person or organization has a right under this Coverage Part: [t]o sue [NAC] on this Coverage Part unless all of its terms have been fully complied with."

"A person or organization may sue [NAC] to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but [NAC] will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance."

*See* Docket No. 21-3 (Yaeckel Decl., Ex. 1) (Ex. A to Compl. at JNI00051). In essence, Reata contends that since there is a judgment entered against Paragon, this clause permits Reata to sue NAC to recover the entire amount of the judgment.

The Court disagrees. The No Action Clause does not adjust the substantive scope of coverage, nor does it create affirmative rights in third-party judgment creditors. Instead, by its plain terms, the No Action Clause is only a procedural limitation on any suit against NAC brought by third parties. This is clear from the first sentence: "No person or organization has a right under this

1  Coverage Part: [t]o sue [NAC] on this Coverage Part unless all of its terms have been fully complied
2  with." The relevant condition that must be satisfied is that a final judgment has been rendered. *See*
3  Croskey, et al., Cal. Practice Guide: Insurance Litigation, Ch. 15-K, ¶ 15:1037, p. 15-179 (Rutter
4  Group 2012) ("'no action' clauses typically require a 'final judgment' or that the insured's
5  obligation shall have been 'finally determined'"). The mere fact of a judgment in the underlying
6  case does not confer coverage.

### D. Third-Party Beneficiary

Once coverage is determined to exist, the only remaining issue is whether the third-party judgment creditor may enforce coverage; to do so, it must be deemed a third-party beneficiary to the insurance policy provision at issue under *San Diego Housing* and *Clark*.

In *San Diego Housing*, plaintiff brought a construction defect action against a general contractor. Plaintiff proceeded against the insurer under Section 11580 to recover on a default judgment, including an award of attorney's fees and costs. The trial court held that plaintiff could recover on the entire judgment, including costs covered by the Supplementary Payments Provision, despite its status as a third-party beneficiary of the insurance policy. *See San Diego Housing*, 95 Cal. App. 4th at 677. The Court of Appeal modified the award to exclude amounts that were covered by the Supplementary Payments Provision. The Court of Appeal reasoned that Section 11580 creates a beneficiary relationship between the judgment creditor and the insurer, but only as to those policy terms created for his benefit. *Id.* at 691-92. The court then reasoned that costs covered by the Supplementary Payments Provision were "clearly linked" to the insurer's duty to defend (in contrast to the insurer's duty to indemnify) the insured. *Id.* at 691. The court concluded that the third-party judgment creditor is only an "incidental beneficiary" of the duty to defend. *Id.* at 692 (citing *Harper v. Wasau Ins. Co.*, 56 Cal. App. 4th 1079, 1089 (1997)). As such, the judgment creditor was not an intended third-party beneficiary of the duty to defend and thus cannot recover on the fee award of fees and costs which are covered solely under that duty. Accordingly, the creditor could not sue the insurer under Section 11580 for fees and costs.

Similarly, in *Clark*, the plaintiff obtained a personal-injury judgment against an insured. Because the insurer had dissolved, the California Insurance Guarantee Association ("CIGA") issued

7

1  a check in partial satisfaction of the judgment. Plaintiff then brought an action under Section 11580
2  to recover the deficiency. The trial court held that a third-party judgment creditor may not enforce
3  an award of costs and interest in a direct action against an insurer under Section 11580, absent an
4  assignment of that right to the third-party judgment creditor. *See Clark*, *supra*, 200 Cal. App. 4th at
5  394. Accordingly, the trial court granted summary judgment for CIGA. The Court of Appeal
6  affirmed, concluding that since a judgment creditor is only an "incidental beneficiary" and not a
7  third-party beneficiary of the Supplementary Payments Provision, costs and interest awarded on a
8  judgment are not recoverable under Section 11580. *See id*. at 397-98. The court cited *San Diego*
9  *Housing* in support of its holding.

10  This Court is unaware of binding or persuasive authority that has disapproved of either *San*
11  *Diego Housing* or *Clark*. A number of courts have relied on their reasoning in unpublished
12  opinions.[3] *See e.g.*, *Sensation Leather, Inc. v. CIGA*, No. BC203086, 2008 WL 5050436, *4 (Cal.
13  App. 2d Dist. 2008) (affirming denial of interest on judgment awarded to third-party judgment
14  creditor); *Garamendi v. Golden Eagle Ins. Co.*, No. A102489, 2004 WL 1814163, *7 (Cal. App. 1st
15  Dist. 2004) (reversing trial-court order forcing insurer to accept indemnity claim made by third-party
16  judgment credit because claimant had no recourse without an assignment); *Martinez v. Lincoln Gen.*
17  *Ins. Co.*, No. 07-CV-7569 (MLR), 2009 WL 6337983, *5 (C.D. Cal. Aug. 27, 2009), *rev'd on other*
18  *grounds*, 417 Fed. Appx. 711 (9th Cir. 2011) (unpublished). *See* Croskey, et al., Cal. Practice
19  Guide: Insurance Litigation, Ch. 15-K, ¶ 15:1042, pg. 15-181 (Rutter Group 2012) (notwithstanding
20  Section 11580, judgment creditor may not recover costs under the supplementary payments
21  provision).

22  Key to the holdings of *San Diego Housing* and *Clark* is the notion that an insurer's duty to
23  pay "costs" under the Supplementary Payments Provision is "clearly linked" to an insurer's duty to

---

[3] California Rule of the Court 8.1115 provides that unpublished opinions "must not be cited or relied on by a court or a party in any other action." This Court, however, has cited these unpublished California opinions not as decisional law or for its persuasive value. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 895 (9th Cir. 1996) (taking note of unpublished California opinion but not as "decisional law"); *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 876 (9th Cir. 2008) (citing unpublished California opinions only to show Calif. Penal Code section 475(c), which penalizes forgery, had been applied outside of the generic definition of "forgery").

defend, under which a third-party judgment creditor is only an incidental beneficiary, as opposed to its duty to indemnify, under which it is the intended beneficiary. In *Prichard*, for example, the court interpreted policy language nearly identical to portions of the Supplementary Payments Provision at issue here as relating to the insurer's duty to defend (and not its duty to indemnify):

> "We will pay, with respect to any claim or 'suit' *we defend*: [¶]...[¶] 5. All costs taxed against the insured in the 'suit.'"

*Prichard*, 84 Cal. App. 4th at 911. In particular, the court noted: "As the italicized words indicate [(i.e., "*we defend*")], the supplementary payments provision providing 'costs taxed' is a function of the insurer's defense obligation, not is indemnity obligation." *Id*. Similarly, Justice Croskey of the Second Appellate District noted that the words "in suits we defend" is typically interpreted to mean "the insurer's obligation to pay an award of costs against the insured [is] dependent on the defense duty." *State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274, 285-85 (2009).

To be sure, the Court recognizes an argument that an insurer's duty to pay fees and costs under the Supplementary Payments Provision, once incorporated into a final judgment against the insured, seems akin to the duty to indemnify. "[P]roviding a defense is hardly the same as indemnifying the insured for the other party's costs and attorney fees that the insured becomes obligated to pay only as the result of being found liable for the underlying misconduct." *Combs v. State Farm Fire & Cas. Co.*, 13 Cal. App. 4th 1338, 1345-46 (2008). However, the California courts that have addressed the precise issue at bar, *Prichard*, *San Diego Housing*, and *Clark*, have consistently held against the third-party creditors on this question. The Court is obliged to follow these cases as the best indicators of how the California Supreme Court would rule. Therefore, given the current state of California law, as articulated by *San Diego Housing* and *Clark*, Reata, as the third-party judgment creditor, may not recover directly from NAC fees and costs covered solely under the policy's SPP.

Reata argues that nonetheless, as a factual matter, the parties intended it as a third-party beneficiary in this case. However, the determinations in *San Diego Housing* and *Clark* relevant to NAC's motion for summary judgment here – that (a) "costs" under the SPP are linked to the duty to defend, and (b) a third-party judgment creditor is only an incidental beneficiary of that duty – appear

9

to have been resolved as questions of law.  Moreover, even if either determination were a question of fact, Plaintiff has adduced no material facts distinguishing the policy at issue here from the supplementary payments provision at issue in *San Diego Housing*.  In particular, Plaintiff has not offered evidence probative on the issue of whether the parties, *at the time of formation*, intended third-party judgment creditors, like itself, to be the intended beneficiaries of the SPP.[4]

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for partial summary judgment.  More specifically, the Court concludes that, absent an assignment from the insured, Plaintiff may not enforce directly against NAC the award of attorney's fees and costs against Paragon.

This order disposes of Docket No. 21.

IT IS SO ORDERED.

Dated: July 5, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[4] Plaintiffs contend that two pieces of evidence support their interpretation that NAC is responsible for fees and costs under the policy: (1) NAC's decision to raise its "allocated loss adjustment expense," a measure of the insurer's estimated coverage risk, to account for the prevailing party fee award; and (2) NAC's decision to fight the prevailing party fee awarded in arbitration.  *See* Docket Nos. 22-16 (Heimberger Decl., Ex. N), 22-9 (Heimberger Decl., Ex. G); 22-13 (Heimberger Decl., Ex. K). At the outset, the Court notes that Reata does not contend the intent of the parties was that judgment creditors would be intended beneficiaries of the SPP, which would rebut the conclusion that Reata is only an incidental beneficiary.  In any case, the Court finds that such evidence would not create a genuine issue of material fact precluding summary judgment even if the matters were not categorically questions of law.  In particular, such evidence is not probative of the party's intention at the time of formation concerning whether judgment creditors were intended beneficiaries of the Supplementary Payments Provision.  Thus, unlike in *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, which Reata cites approvingly, the conduct in question here occurred well *after* the dispute had already arisen. *City of Hope*, 43 Cal. 4th 375, 349 (2008) (party's conduct after contract formation but before dispute arose admissible to resolve ambiguities in agreement). Moreover, a decision to raise the allocated loss adjustment expense, for example, merely may indicate caution on the part of the insurer rather than an admission that it could be directly liable to Reata.  Nor does such evidence create an ambiguity in the relevant policy language, especially since Reata fails to identify what specific policy term is rendered ambiguous by this evidence.