UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD GELFAND, | No. C-12-4819 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| NORTH AMERICAN CAPACITY INSURANCE COMPANY, | **(Docket No. 45)** |
| Defendant. _____/ | |

Plaintiff Todd Gelfand, trustee of the Reata Trust ("Reata"), is a judgment creditor who brings the current action to recover on an arbitration award issued against defendant and insurer Northern American Capacity Insurance Company ("NAC") and confirmed by a state court. Currently pending before the Court is NAC's consolidated motion for partial summary judgment (Docket No. 45).

Having considered the parties' moving and response papers,[1] the Court hereby **DENIES** NAC's motion for partial summary judgment for the reasons set forth below.

## I. FACTUAL & PROCEDURAL BACKGROUND

Paragon General Contractors & Cabinetmakers, Inc. ("Paragon") constructed a luxury home in Half Moon Bay owned by Reata. *See* Docket No. 46-1 (Decl. of A. Carl Yaeckel, or "Yaeckel

---

[1] In response to parties' stipulation to continue the hearing date on this motion (Docket No. 49), the Court vacated the hearing and deemed the matter submitted on the papers. *See* Docket No. 50.

Decl.," Ex. 1) (Complaint, or "Compl.," ¶ 1).[2]  Later, alleging construction defects, Reata sued Paragon in arbitration in 2001. *Id*. ¶ 28.

NAC issued a commercial general liability insurance policy (the "Policy") to Paragon. *Id*. ¶14.  NAC retained counsel to defend Paragon in arbitration. *Id.* at ¶ 29.  During arbitration, Paragon filed for Chapter 7 bankruptcy. *Id*. at ¶ 32.  Shortly thereafter, NAC formally intervened in the arbitration *Id*. ¶¶ 33-37.  NAC also asserted cross-claims against several subcontractors and/or materials suppliers for indemnity, fees, and costs. *See* Docket No. 47-2 (Decl. of Ann M. Heimberger, or "Heimberger Decl.," at ¶ 10).

In December 2010, the arbitrator awarded Reata $1,390,774.19, which included an award of $585,404.27 in attorney's fees and $35,767.21 in costs. *See* Docket No. 47-3 (Heimberger Decl., Ex. A) (Arbitration Award, at pgs. 18, 21).  In May 2011, Reata petitioned to confirm the award in San Francisco Superior Court. *See* Docket No. 22-2 (Heimberger Decl., ¶ 21).  The state court confirmed the award in November 2011, *see* Docket No. 47-2 (Heimberger Decl., Ex. G) (Order Confirming Award), and entered judgment for Reata in January 2012, *see* Docket No. 47-2 (Heimberger Decl., Ex. G) (Order Confirming Award).  When it confirmed the award the state court hand-wrote the following on the order: "NAC has not waived coverage defenses."  *See* Docket No. 47-2 (Heimberger Decl., Ex. G) (Order Confirming Award).  This phrase was reiterated verbatim when it entered judgment in favor of Reata. *See* Docket No. 47-2 (Heimberger Decl., Ex. H) (Judgment Confirming Award, ¶ 4) ("NAC has not waived coverage defenses.").

In August 2012, Reata brought the current action to recover on the state-court judgment. *See* Docket No. 46-1 (Yaeckel Decl., Ex. 1) (Compl. ¶ 7, JNI002).  Reata's complaint asserts three causes of action: (1) direct action under Calif. Ins. Code § 11580; (2) breach of insurance contract;

---

[2] The parties request that this Court take judicial notice of certain documents from a prior arbitration.  Docket No. 47-6 (Pltf.'s RJN); Docket No. 45-2 (Dft.'s RJN).  The Court grants these requests on grounds that neither party opposes the other party's request, see e.g., Docket No. 47-6 (Pltf.'s RJN, at pg. 1 n. 1) ("Reata does not oppose, and joins in, NAC's Request for Judicial Notice. . . ."), and this Court may take judicial notice of the records of other courts or tribunals germane to the issues in this action.  *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").  *See also Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) (taking judicial notice of relevant matters from a Tennessee state-court proceeding).

2

and (3) breach of implied covenant of good faith and fair dealing. *See generally* Docket No. 46-1 (Yaeckel Decl., Ex. 1) (Compl. ¶¶ 51-62, 63-72, and 73-81). In September 2012, NAC removed the matter to this Court on diversity grounds. *See* Docket No. 1 (Notice of Removal).

During the pendency of this action, in January 2013, NAC paid Reata $210,687 in partial satisfaction of the judgment relating to some of the property damage alleged by Reata. *See* Docket No. 46-10 (Yaeckel Decl., Ex. 9) (January 31, 2013 Letter). Two months later, NAC also paid Reata $70,519.15 for *Stearman* fees.[3] *See* Docket No. 46-11 (Yaeckel Decl., Ex. 10 ) (3/20/2013 Letter to Reata).

Prior to the current consolidated motion for partial summary judgment, this Court granted NAC partial summary judgment on the discrete issue of whether Reata, as judgment creditor, may recover that portion of the judgment obtained in arbitration consisting of attorneys' fees and costs, which this Court answered in the negative. *See* Docket No. 27.

## II. DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

---

[3] *Stearman* fees consist of fees paid to "consultants retained to assist in determining the appropriate repairs to correct the defect" in construction. *See* Croskey, et al., Cal. Practice Guide: Insurance Litigation, ¶ 9:47.1 (Rutter Group 2013) (citing *Stearman v. Centex Homes*, 78 Cal. App. 4th 611, 625 (2000)).

3

1    In the current case, NAC moves for partial summary judgment on various issues, including (1) whether Reata's breach of good faith and fair dealing claim ("bad faith") fails, as a matter of law; (2) whether NAC is entitled to judgment on Reata's punitive damages claim; and (3) whether Reata is precluded from arguing in this action that NAC waived their coverage defenses under the doctrines of res judicata and/or collateral estoppel. Reata has the ultimate burden of proof on bad faith and punitive damages claims, whereas NAC arguably has the burden of proof on its contention that Reata is precluded from arguing it waived its coverage defenses.

Thus, as to the first two claims NAC may prevail on its motion for summary judgment simply by pointing to Reata's failure "to make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, as to NAC's contention Reata is precluded from arguing waiver, NAC likely has the burden[4] and thus can prevail by showing sufficient facts to show no reasonable trier of fact could find other than for the moving party. *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) ("When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.").

///
///
///

---

[4] The parties do not discuss who has the burden of proof where a party is contending that the other is precluded from raising an argument based on collateral estoppel or res judicata grounds. Nonetheless, the Court finds that NAC bears the burden. First, a party who raises collateral estoppel or res judicata bears the burden of producing facts in support of those defenses. *See Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990) ("The party asserting collateral estoppel bears the burden of establishing these requirements."); *Vella v. Hudgins*, 20 Cal.3d 251, 257 (1977) ("The burden of proving that the requirements for application of res judicata have been met is upon the party seeking to assert it as a bar or estoppel."). Second, even if this Court were to construe NAC's contention here as a request to declare that NAC did not waive its coverage defenses, NAC would bear the ultimate burden of proof, as the party seeking declaratory relief. *See Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993) (noting in declaratory relief action brought by insured to determine duty-to-defend issue, insured had burden to prove the existence of a potential for coverage).

4

B.   Bad Faith/Breach of Insurance Contract

    1.   *Hand* is Good Law

NAC moves for summary judgment on both Reata's breach of covenant of good faith and fair dealing ("bad faith") and breach of contract claims contending no tort damages for bad faith are owed unless a duty exists between the insurer and the third party. Reata disagrees and relies heavily on *Hand v. Farmers Ins. Exchange*, 23 Cal. App. 4th 1847 (1994), where an insurer was held liable to a judgment creditor for its bad faith refusal to pay an adjudicated judgment. The crux of NAC's argument is that *Hand* – where the court held an insurer owed a duty to a judgment creditor because a special relationship exists between them – is not good law and even assuming it is good law, it is factually inapposite.

The Court rejects the notion that *Hand* is not good law. In particular, the Court does not agree that *Hand* conflicts with California Supreme Court precedent, as embodied by *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937 (1976) and *Coleman v. Gulf Ins.*, 41 Cal.3d 782, 788 (1986). At the outset, *Murphy* is distinguishable because it involved the duty to settle, not a claim for bad faith. In *Hand*, the court recognized the significance of this distinction by noting that unlike the duty to settle, the duty indemnify, including the duty not to withhold payment in bad faith, inures to the benefit of the judgment creditor and the insured. *Hand*, 23 Cal. App. 4th at 1858. *Coleman* is similarly inapposite because it relies on *Murphy* for the proposition that the duty to settle does not inure to the benefit of third parties. *Coleman* is further distinguishable because, unlike the facts currently before this Court, the judgment in *Coleman* was not yet final. *See Coleman*, 23 Cal. App. 4th at 1857, n. 6.

The Court is also unpersuaded by NAC's contention that two California appellate courts have criticized or declined to adopt the reasoning of *Hand* – *Hughes v. Mid-Cent. Ins. Co.*, 38 Cal. App. 4th 1176 (1995) and *Maxwell v. Fire Ins. Exchange*, 60 Cal. App. 4th 1446, 1452 (1998). In *Hughes*, the court did not pass judgment on the *Hand* decision. *Hughes*, 38 Cal. App. 4th at 1184 ("Although the analysis in *Hand* might be viewed as improperly extending the law of tortious bad faith particularly by finding a 'special relationship' exists between an insurer and its insured's judgment creditor (*id.* at p. 1860), ***we need not determine*** whether *Hand* accurately states the law."). In fact, the *Hughes* [court found the facts before it would fail under *Hand*. *See id.* at 1184-85

5

(noting that judgment creditor's claim would fail even if the court had applied *Hand* because the judgment was not final: "In essence, Hughes brought this suit before achieving the status of a judgment creditor enjoying third party beneficiary status and rights under the policy.").

While *Maxwell* declined to extend the *Hand* decision, the court did not clearly articulate the nature of its disapproval: "To the extent that *Hand v. Farmers Ins. Exchange* (1994) 23 Cal.App.4th 1847 [29 Cal.Rptr.2d 258] could be deemed inconsistent with the principles we have enunciated we decline to follow it." *Maxwell v. Fire Ins. Exchange*, 60 Cal. App. 4th 1446, 1452 (1998). In *Maxwell*, plaintiff brought suit after boy was struck in the face with a bat. Plaintiff sued the batting cage owner and its insurer. Because the insurer waited 81 days to satisfy the judgment, plaintiff brought suit seeking damages for breach of contract and bad faith withholding of amounts due under judgment. The trial court granted summary judgment in favor of the insurer on grounds plaintiff could not prove economic loss, other than a delay in payment. The Court of Appeals affirmed, finding that plaintiff could not recover without a showing of economic loss. However, *Maxwell* is distinguishable. Maxwell did not hold that a judgment creditor can never bring an action for bad faith against the insurer. Instead, the court found emotional distress damages were not recoverable in a bad faith action without a showing of economic loss. *Maxwell*, 60 Cal. App. 4th at 1450 ("We hold that the ***emotional distress damages*** which appellant seeks are not recoverable in a bad faith action arising out of a third party claim absent a showing that appellant has suffered an economic loss.") (emphasis added). Hence, not only did *Maxwell* not categorically bar a bad faith claim, the restriction it applied do not bar the claim here: NAC does not assert that Reata does not claim economic loss as a result of its delay.

Importantly, the most recent California appellate court decision cited by the parties followed *Hand* – *Diamond Woodworks, Inc. v. Argonaut Ins. Co.*, 109 Cal. App. 4th 1020, 1044 (2003), *overruled on other grounds by Simon v. San Paolo U.S. Holding Co., Inc.*, 35 Cal.4th 1159 (2005)). In *Diamond*, an employer (Diamond) sued a worker's compensation insurer for breach of contract, bad faith (lack of prompt payment), and fraud, after its employee was injured. The employee was injured at job site maintained by another company, BSC. BSC agreed with Diamond to obtain insurance for the job site. The central issue was whether Diamond, and as a consequence its

employee, could avail itself of BSC's insurance policy, despite being a third-party. The jury found for Diamond. The Court of Appeals affirmed. The court found that, under Labor Code section 3602, Diamond stood in the same shoes as the insured, BSC. Thus, under the reasoning of *Hand*, "the implied covenant and its duties ran not only to BSC, but to Diamond, the third party beneficiary." *Diamond*, 109 Cal. App. 4th at 1045. NAC tries to distinguish *Diamond* on grounds that unlike section 11580, "which limits claimant's right to a suit 'on the policy and subject to its terms and limitations. . . ,'" section 3602 placed BCS and Diamond on an equal footing. *See* Docket No. 48 (Reply, at pg. 3) (citing *Diamond*). This distinction is without significance because the statutes are functionally equivalent – both place a third-party beneficiary on an equal footing with a signatory (*e.g.*, insured) to the original insurance contract. In both instances, the third party beneficiary seeks the benefit of the policy and subject to its terms.

Furthermore, federal courts in this circuit have applied or cited *Hand* approvingly. *See e.g.*, *Estate of Cartledge v. Columbia Cas. Co.*, No. C11-2623 WBS, 2011 WL 5884255, at *5 (E.D. Cal. Nov. 23, 2011) ("[A] judgment creditor is properly considered to be a third party beneficiary of an insurance contract who is owed certain duties under the implied covenant of good faith and fair dealing and may sue the insurer for breach of these duties."); *Johnson v. Am. Cas. Co. of Reading Pa.*, No. 09-2125 SC, 2011 WL 3739032, at *3 (N.D. Cal., Aug. 23, 2011) ("*Hand* clearly recognizes a claim by a judgment creditor such as Johnson against an insurance company for failure to pay the amount of the judgment."); *Jones v. St. Paul Travelers*, 496 F. Supp. 2d 1079, 1087 (N.D. Cal. 2007) (finding "that California law governs this claim, and that plaintiffs may allege such a claim," referring to a bad faith claim, where plaintiff alleged that defendants "unreasonably refused and persisted in their unreasonable refusal, to pay a judgment against the insured") (citing *Hand*); *Ham v. Continental Ins. Co.*, No. 08-1551-SC, 2009 WL 513474, at *3 (N.D. Cal. Mar. 2, 2009) ("Unlike the duty to settle, the insurer's duty not to withhold in bad faith payment of adjudicated claims runs not only in favor of the insured but also in favor of the judgment creditor. . .[citing *Hand*]. . .Hence, a judgment creditor can bring an action for breach of the duty to pay."). *See also Chen v. Scottsdale Ins. Co.*, No. 99-55601, 1 Fed. Appx. 691, 692 (9th Cir. 2001) ("[U]nder Section 11580 of the California Insurance Code, a third party claimant who receives a "final judgment"

1 against the insured becomes a third party beneficiary to the insurance contract and may sue directly
2 on its provisions, including the covenant of good faith and fair dealing.") (citing *Hand*).

### 2. *Hand* Applies

Next, NAC contends *Hand* is factually inapposite because, there, the insurer failed to pay the <u>entire</u> judgment, whereas here, NAC has already paid a portion of the judgment and NAC's decision to do so was confirmed by this Court's order that Reata is not entitled attorney's fees and costs. *See* Docket No. 48 (Reply, at pg. 5) ("In this case, plaintiff first made the claim that NAC failed to pay the entire judgment and that that was the cause of the lawsuit. That claim can no longer stand since NAC did not have an obligation to pay the entire judgment."). *See also* Docket No. 45 ("The Court's Order that plaintiff cannot recover the attorney's fees/costs portion of the Judgment means that the breach of contract alleged by plaintiff did not occur."). NAC reads *Hand* too narrowly and infers a limitation not recognized or articulated by the court in *Hand*.

NAC's contention that because it was not liable for the <u>entire</u> judgment (*e.g.*, attorney's fees and costs), it cannot be held liable, as a matter of law, for bad faith or breach of contract is without merit. NAC's position makes no logical sense. NAC has failed to explain why an unreasonable refusal to relinquish the balance of the award due to Reata, even after subtracting the attorney's fees and costs were withheld, could not constitute bad faith. Nor does NAC explain why it was objectively reasonable to withhold the amounts they later voluntarily paid until <u>after</u> this action was filed – $210,687 (partial satisfaction of the judgment) and $70,519.15 (*Stearman* fees).

NAC cites two California appellate cases – *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 973 (2003) and *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 277 (2005) – for the proposition that an insurer's refusal to pay an <u>entire</u> judgment does not give rise to a bad faith claim where the coverage decision is "objectively reasonable." However, *CalFarm* does not stand for that proposition because the court there held that the insurer's decision to withhold the *contested* portion was objectively reasonable, in light of the unsettled nature of the law. *Morris* is similarly inapposite. *See Morris*, 109 Cal. App. 4th at 973 (amount owed turned on a single issue, *i.e.*, whether coverage was properly denied because insured's medical condition manifested even before

1 policy issued, despite incontestability clause, which held coverage could not be contested two years
2 after issuance of policy).

3 NAC's motion for summary judgment on Reata's bad faith claim is denied.[5]

C. <u>Punitive Damages</u>

NAC moves for summary judgment on Reata's punitive damages claim. NAC contends that, under the applicable legal standard, Reata's evidence of fraud, malice or oppression is insufficient as a matter of law. *See* Docket No. 48 (Reply, at pg. 9).[6] A party seeking punitive damages must show by "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Calif. Civ. Code § 3294 (1992). "Malice" means conduct "intended to cause injury" or "despicable conduct" carried out "with a willful and conscious disregard of the rights or safety of others." *Id*. at (c)(1). Malicious intent "may be inferred from the circumstances of the case." *Richardson v. Employers Liab. Assur. Corp.*, 25 Cal. App. 3d 232, 245 (1972) (insisting on arbitration despite insurer knew the insurance claim was valid constitutes malice for punitive damages purposes), *disapproved of on other grounds by Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566 (1973). "Oppression" means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id*. at (c)(2). "Fraud" means "intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention. . . of thereby depriving a person of property or legal rights or otherwise causing injury." *Id*. at (c)(3).[7]

The determination of punitive damages has "traditionally been left to the discretion of the jury." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1165 (9th Cir. 2002) (citing *Egan v.*

---

[5] In its motion for partial summary judgment, NAC lumps Reata's bad faith claim with its breach of insurance contract claim. Yet, the thrust of *Hand* was bad faith. In any case, Reata correctly notes that a judgment creditor can bring suit under section 11580 for breach of an insurance contract between the insured and the insurer.

[6] As a threshold matter, while section 11580 does not explicitly provide for punitive damages, a judgment creditor is not barred from bringing such a claim under California Civil Code § 3294. *Jones v. St. Paul Travelers*, 496 F. Supp. 2d 1079, 1087 (N.D. Cal. 2007).

[7] NAC contends that Reata failed to plead fraud, and as such fraud cannot form the basis for punitive damages here. However, bad faith conduct involving deceit is regarded as fraudulent. *Richardson*, 25 Cal. App. 3d at 245.

United States District Court
For the Northern District of California

1  *Mut. of Omaha Ins. Co.*, 24 Cal.3d 809, 821 (1979)).  Thus, "summary judgment 'on the issue of
2  punitive damages is proper' only 'when no reasonable jury could find the plaintiff's evidence to be
3  clear and convincing proof of malice, fraud or oppression.'" *Spinks v. Equity Residential Briarwood*
4  *Apartments*, 171 Cal. App. 4th 1004, 1053 (2009).  While the clear and convincing evidentiary
5  standard is a stringent one, "it does not impose on a plaintiff the obligation to 'prove' a case for
6  punitive damages at [the] summary judgment [stage]." *Id*. at 1053 (citing *American Airlines, Inc. v.*
7  *Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1049 (2002)).

8      NAC argues there are insufficient facts to support punitive damages.  Reata responds that
9  there are triable issues as to whether NAC's conduct would permit a reasonable jury to award
10  punitive damages in its favor.  For example, Reata has produced evidence that despite obtaining an
11  arbitration award, NAC refused to pay even uncontested portions of the judgment, and even
12  admitted requiring an insured to sue for covered amounts does not comport with NAC's general
13  practice. *See* Docket No. 47-4 (Heimberger Decl., Ex. L) (Excerpts of Walleston Depo., at pg.
14  87:17-88:19).  Reata further produced evidence supporting an inference that NAC may have
15  withheld covered amounts to exact a "low-ball settlement," despite admissions from NAC personnel
16  that such a practice is generally inappropriate. *See* Docket No. 47-4 (Heimberger Decl., Ex. L)
17  (Excerpts of Walleston Depo., at pg. 27:8-28:10) (admitting it is inappropriate to withhold covered
18  amounts as a "mechanism to settle."); Docket No. 47-4 (Heimberger Decl., Ex. J) (Excerpts of
19  Thibadeau Depo., at pg. 20:21-24) (explaining uncontested amounts were not paid in part because
20  NAC "had hoped to settle the entire case.").

21      Notably, the court in *Shade Foods* found similar facts sufficient to support a finding of
22  malice or oppression. *Shade Foods*, 78 Cal. App. 4th at 892 (though ultimately reversing punitive
23  damage award, finding fact that insurer unreasonably failed to assess coverage, overestimated
24  strength of defenses to deny coverage, and waited a full year until after complaint was filed to offer
25  to pay insured's defense costs sufficient to find that insurer acted "with a willful and conscious
26  disregard of the rights... of others" within the definition of "malice" or that the insurer "subject[ed] a
27  person to cruel and unjust hardship in conscious disregard of that person's rights" within the
28  definition of "oppression").  Importantly, the Court must consider whether the totality of the

evidence viewed in Reata's favor supports a punitive damages claim. *See e.g.*, *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 277-78 (1984) (finding that although insurer's interpretation of policy to exclude coverage was not inherently unreasonable this "evidence in combination" with other evidence that insurer failed to respond to inquiries and failed to conduct an investigation into the claim's validity could support an inference that insurer "willfully and deliberately failed to avoid adverse consequences of its wrongful denial" of the insured's claims, which would support punitive damages).

The Court cannot conclude that the evidence bearing on punitive damages is so wanting at that no reasonable jury could infer that NAC acted with malice or oppressively. The Court reiterates that at the summary judgment Reata is not required to <u>prove</u> fraud, malice or oppression by clear and convincing evidence. This is especially true here where NAC does not attack the factual sufficiency of Reata's bad faith claim. *See* Docket No. 48 (Reply, at pg. 9) ("Plaintiffs spend much of their brief arguing that the question of 'bad faith' raises questions of fact for the jury. NAC's motion regarding the cause of action for breach of the covenant of good faith and fair dealing [*i.e.*, bad faith claim] ***is not based in any way on the alleged facts***.") (emphasis added). Accordingly, since the punitive damages issue is "somewhat dependent " on the issue of bad faith and NAC has not contested the factual sufficiency of Reata's bad faith claim, the Court cannot say as a matter of law that NAC did not act maliciously, oppressively, or fraudulently. *See e.g.*, *R & R Sails, Inc. v. Ins. Co. of State of Pennsylvania*, 610 F. Supp. 2d 1222, 1234 (S.D. Cal. 2009) (denying defendant insurer's motion summary judgment on plaintiff's punitive damages claim: "Given that material issues of fact exist as to whether Defendant acted in bad faith, the Court cannot conclude as a matter of law that Defendant did not act with malice, oppression, or fraud in its handling of Plaintiff's claim.").

Accordingly, NAC's motion for summary judgment on the Reata's punitive damage claim is denied.

D.     <u>Waiver of Coverage Defenses</u>

Preclusion does not obtain where the issue sought to be precluded was not "actually and necessarily decided on the merits" (collateral estoppel), or where there is no final judgment "on the merits" (res judicata). *Vandenberg v. Superior Court*, 21 Cal.4th 815, 834 (1999) (collateral

estoppel requires an issue be "necessarily decided"); *Boeken v. Philip Morris USA, Inc.*, 48 Cal.4th 788, 797 (2010) (res judicata requires a "final judgment on the merits").  In Reata's state-court action brought to confirm the award, NAC argued that it was not bound by the arbitration award because it appeared in the arbitration below only as an intervener on behalf of its insured; it did not raise the issue of insurance coverage.  *See* Docket No. 46-3 (Dft.'s RJN, Ex. 3) (NAC's Response to Reata's Petition to Confirm Award) ("As detailed below, NAC intervened in the underlying arbitration to defend the interests of its suspended corporate insured.  No insurance coverage issues were at issue, not were they [sic] litigated, nor could they be.").  In particular, NAC argued it did not litigate coverage issues for the purpose of underscoring the limited capacity in which it was appearing in the arbitration proceeding.  *Id*.  Additionally, the state court did not decide coverage issues.  Only two issues were properly before the state court: (1) whether NAC was claim precluded from relitigating the amount of the arbitration award and the arbitrator's finding of Paragon's liability; and (2) whether NAC was a party to the arbitration and thus bound by the arbitration award.

As NAC did not assert a coverage defense because of its limited capacity in the underlying action, neither the merits of any coverage defense nor its waiver was at issue.  Although neither the defense nor its waiver were actually and necessarily decided in the state court action, the Court agrees with the state court that NAC did not waive any coverage defenses given the limited nature of its appearance on behalf of its bankrupt insured in the underlying suit.

Accordingly, NAC's motion for summary judgment on the issue of whether Reata is issue or claim precluded from contending that NAC waived its coverage defenses is denied.  However, on the merits, NAC is free to assert coverage defenses.

### III.  CONCLUSION

Based on the foregoing, the Court hereby rules as follows:

1.   NAC's motion for summary judgment on Reata's bad faith and breach of insurance contract claims is **DENIED**.

2.   NAC's motion for summary judgment on Reata's punitive damages claim is **DENIED**.

3. NAC's motion for summary judgment on the issue of whether Reata is barred on collateral estoppel or res judicata grounds from arguing NAC has waived its coverage defenses is **DENIED**. However, NAC is free to argue coverage defenses.

This order disposes of Docket No. 45.

IT IS SO ORDERED.

Dated: December 17, 2013

_____
EDWARD M. CHEN
United States District Judge